## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE HILL, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 21-CV-4084 |
| | : | |
| SUPT. HARRY, *et al*. | : | |
|     Defendants. | : | |

### MEMORANDUM

**ROBRENO, J.**                                               **SEPTEMBER 24, 2021**

Plaintiff Dwayne Hill, an inmate currently incarcerated at SCI Phoenix, filed this action alleging a violation of his civil rights based on events that occurred while he was housed at SCI Camp Hill, and subsequently, at SCI Phoenix.  Named as Defendants are Superintendent L. Harry and Correctional Officer Knaub (collectively the "Camp Hill Defendants"), as well as Superintendent Sorber, Department Superintendent Bradley, Department Superintendent Terra, and Unit Manager Stenkowski (collectively the "Phoenix Defendants").  (ECF No. 1.)  For the following reasons, the Court will dismiss Hill's claims against the Phoenix Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Hill will be granted leave to file an amended complaint as set forth more fully below.

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Hill, along with his wife, initiated this matter by filing a *pro se* Complaint and application to proceed *in forma pauperis* in the United States District Court for the Middle District of Pennsylvania.  (*Id.*)  Pursuant to a Memorandum and an Order dated September 8, 2021, the Honorable Sylvia H. Rambo granted Hill leave to proceed *in forma pauperis*, terminated Hill's

---

[1] The factual allegations are taken from Hill's Complaint.

wife as a plaintiff in this action, dismissed certain of Hill's claims with prejudice, dismissed other claims without prejudice and with leave to amend, and permitted several claims to proceed. (*See* ECF Nos. 11 and 12.)  Additionally, Judge Rambo transferred to this Court Hill's claims against the Phoenix Defendants based on a lack of venue in the Middle District.  (*See id.*) Consequently, this Court's analysis is limited to Hill's claims against the Phoenix Defendants; however, the Court will recount all of Hill's factual allegations to place his claims against the Phoenix Defendants in context.

Hill alleges that family photos and a radio were confiscated by prison officials soon after he arrived at SCI Camp Hill.  (*See* ECF No. 1 at 3.)[2]  He began a letter-writing campaign regarding the "stolen radio and exposing the fact that the prison officials listen to these stolen radios all over the institution."  (*Id.*)  On June 28, 2021, a unit manager at SCI Camp Hill called Hill for an informal misconduct hearing because Defendant Knaub had issued Hill an informal misconduct for loitering in the day room five days prior.  (*Id.* at 3-4.)  Hill went to Defendant Knaub about the misconduct and was told by Defendant Knaub to "go and lock up in his cell." (*Id.* at 4.)  When Hill attempted to explain to Defendant Knaub that it was his prescribed exercise time, Defendant Knaub threatened to spray Hill.  (*Id.*)  According to Hill, he turned to go to his cell, but looked back at Defendant Knaub and was sprayed in the face.  (*Id.*)  Hill alleges that he "has pre-existing respiratory conditions which are known to staff members."  (*Id.* at 5.)  The spray rendered Hill unable to see and burned his skin.  (*Id.*)  Defendant Knaub claimed that Hill charged him with a pencil and tackled Hill to the ground.  (*Id.*)  Hill was given a misconduct for the altercation.  (*Id.*)

---

[2] The Court adopts that pagination supplied by the CM/ECF docketing system.

Hill alleges that he suffered serious injuries from the incident, including blurred vision in both eyes and a flickering of light in his left eye.  (*Id.*)  He also "suffered an asthma attack and had to be placed on oxygen.  He is having chest pain when he breathes deeply."  (*Id.*)  Additionally, Hill "suffered injuries to the neck, right elbow and left knee from being slammed to the ground.  He has cuts on both wrists and numbness in his hands from the cuffs."  (*Id.* at 5-6.)  He claims that he "has made numerous requests for medical treatment, both verbally and written requests, and they have been ignored."  (*Id.* at 6.)

According to Hill, on June 29, 2021, the day after the incident with Defendant Knaub, Defendants Harry and Sorber "arranged Mr. Hill's immediate Transfer from SCI Camp Hill to SCI Phoenix where he was placed back in isolation."  (*Id.*)  He claims that he was transferred without any of his personal property and "put in a cell with nothing but his O.C. sprayed jumpsuit."  (*Id.*)  He claims that he "was not seen by medical until July 12, 2021.  They failed to check his eyes, breathing or heart.  They failed to take any X-rays and simply prescribed him some Motrin for the pain.  The examination was designed to check for visible injuries."  (*Id.*)

On June 30, 2021, Hill met with the Program Review Committee ("PRC") at SCI Phoenix, which is comprised of Defendants Bradley, Terra, and Stenkowski.  (*Id.*)[3]  Hill contends that "the PRC informed Mr. Hill that they would be processing him for the Restricted Release Program (RRL) regardless of the outcome of his misconduct."  (*Id.* at 7.)  According to Hill, "this shows their decision was based on retaliation and not on the facts of the case.  PRC started the process that day, long before the actual misconduct hearing."  (*Id.*)  Hill describes

---

[3] Although Hill discusses only Defendants Bradley and Stenkowski as members of the Program Review Committee in the body of the Complaint, *see* ECF No. 1 at 6-7, it appears that Defendant Terra signed the June 30, 2021 Program Review Committee Report that is attached to Hill's Complaint, *see* ECF No. 1-4.

RRL as "an indefinite isolation status reserved for prisoners with serious assaults while in jail or commit murder while incarcerated." (*Id.*) Hill was found guilty on an unspecified day in July 2021 "of assault for allegedly charging the officer and given 90 days in isolation." (*Id.*) He also claims that his RRL status "is unreasonable and unjustified" because he "has no serious assaults against others and has only received 3 misconducts in the past 10 years." (*Id.*) Hill further alleges that Defendants Harry and Sorber "arranged Mr. Hill's transfer in order to have him placed on RRL." (*Id.*) Moreover, Hill claims that "whenever he files grievances, SCI Phoenix says they must be filed with SCI Camp Hill and when Mr. Hill mails his grievances to SCI Camp Hill, he never receives a reply." (*Id.*)

In its entirety, the Complaint alleges violations of Hill's First, Eighth, and Fourteenth Amendment rights, as well as state law claims. (*Id.* at 1.) Hill seeks unspecified declaratory and injunctive relief, as well as damages. (*Id.* at 8.)

## II.   STANDARD OF REVIEW

Because Hill is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

(quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do

not suffice.  *Iqbal*, 556 U.S. at 678.  As Hill is proceeding *pro se*, the Court construes his

allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay*

*Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially

'when dealing with imprisoned *pro se* litigants[.]'"  *Id.* (quoting *Mala*, 704 F.3d at 244).  The

Court will "apply the relevant legal principle even when the complaint has failed to name

it."  *Id.*  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support

a claim.'"  *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is

Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).  Liberally construing Hill's Complaint as this Court must do, the Court

understands the Complaint as presenting claims against the Phoenix Defendants for deliberate

indifference to his medical needs and due process violations.  Despite that liberal construction,

Hill has not alleged a plausible basis for a claim against any Phoenix Defendant.

A.       **Claims against Defendant Sorber**

Hill alleges that Defendant Sorber, along with Defendant Harry, "arranged" Hill's transfer from SCI Camp Hill to SCI Phoenix where he was placed in isolation "in order to place him on RRL."  (ECF No. 1 at 6, 7.)  It is well-settled that prisoners have no inherent constitutional right to placement in any particular prison.  *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) ("A state has broad authority to confine an inmate in any of its institutions.").  Thus, Hill cannot maintain a constitutional claim against Defendant Sorber based on his transfer from SCI Camp Hill to SCI Phoenix.

The Court further notes that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs."  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims).  Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence."  *Rode*, 825 F.2d at 1207.  Here, Hill does not allege any factual details about the involvement of Defendant Sorber in the decision to place Hill on RRL status.  Thus, Hill has not pled a plausible constitutional claim against Defendant Sorber on this basis.

Additionally, to the extent that Hill seeks to assert a claim based on a supervisory liability theory against Defendant Sorber, he has failed to allege a plausible claim.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*  Hill does not allege that Defendant Sorber, with deliberate indifference to the consequences, maintained a policy, practice or custom that resulted in the conduct that allegedly violated Hill's constitutional rights, nor does he allege that Defendant Sorber participated in the alleged improper conduct. Accordingly, Hill has failed to state a plausible claim of supervisory liability against Defendant Sorber.

## B.    Claims against Defendants Bradley, Terra, and Stenkowski

Hill takes issue with the PRC's decision to place him on RRL status.[4]  This determination was made on June 30, 2021, and occurred before the hearing was held on the misconduct for the

---

[4] Hill alleges that RRL status is "an indefinite isolation status reserved for prisoners with serious assaults while in jail or [who] commit murder while incarcerated."  (ECF No. 1 at 7.)  The Court takes judicial notice that the PRC Report that accompanies Hill's Complaint reflects that RRL is deemed to be administrative custody and not disciplinary custody.  (*See* ECF No. 1-4.)  *See also Bramble v. Wetzel*, Civ. A. No. 20-2394, 2021 WL 3190710, at *4 (M.D. Pa. July 27, 2021) ("RRL inmates constitute a subset of the universe of prisoners placed in administrative custody.").

altercation with Defendant Knaub.  (*See* ECF No. 1 at 6-7.)  Hill alleges that the PRC informed him that "they would be processing him for the Restricted Release Program (RRL) regardless of the outcome of his misconduct."  (*Id.* at 7.)  Hill's allegations against Defendants Bradley, Terra, and Stenkowski are construed as a due process claim based on their June 30, 2021 determination.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie."  *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)).  When considering whether a liberty interest is implicated, a Court's focus must be on the "the nature of the deprivation" experienced by the prisoner.  *Sandin v. Conner*, 515 U.S. 472, 481 (1995). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . [b]ut these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 483-84 (internal citations omitted).  As the Supreme Court has explained, "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  *Id.* at 485.  "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest."  *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (citing *Sandin*, 515 U.S. at 486)).

"When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those

imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (*per curiam*) (citing *Shoats v. Horn,* 213 F.3d 140, 144 (3d Cir. 2000)).  In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest.  *See Sandin*, 515 U.S. at 486; *see also Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (*per curiam*) (no liberty interest triggered by 90-day placement in disciplinary segregation); *Smith*, 293 F.3d at 654 (no liberty interest triggered by seven-month placement in disciplinary confinement).  Placement in administrative segregation like RRL only implicates a protectable liberty interest sufficient to trigger due process protections "if it dramatically departs, in length of time or otherwise, from basic prison conditions."  *See Crawford v. Lappin*, 446 F. App'x 413, 415 (3d Cir. 2011) (*per curiam*) (citing *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003)).  The Third Circuit Court of Appeals has held that "[p]lacement in administrative segregation for days or months at a time . . . do[es] not implicate a protected liberty interest."  *Arango v. Winstead*, 352 F. App'x 664, 666 (3d Cir. 2009) (*per curiam*) (citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002); *Fraise v. Terhune*, 283 F.3d 506, 522-23 (3d Cir. 2002)).

It is unclear precisely how long Hill was on RRL status prior to the misconduct hearing for the altercation with Defendant Knaub.  The PRC Report that accompanies Hill's Complaint reflects that Hill was given this status on June 30, 2021, "pending [the misconduct] hearing."  (*See* ECF No. 1-4.)[5]  Hill does not include the date of the misconduct hearing in the Complaint, but alleges that he was found guilty on an unspecified day in July 2021.  (*Id.*)  Thus, no more than one month passed between the PRC proceeding and the misconduct hearing.  Consequently,

---

[5] The PRC report indicates that Hill was to "remain [in] A[dministrative] C[ustody] pending hearing.  Process for Restricted Release.  Numerous prior assaults not appropriate for population."  (ECF No. 1-4.)

Hill has not alleged the type of atypical or significant hardship implicating a protected liberty interest. *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)). Absent a protected liberty interest, Hill cannot maintain claims regarding alleged procedural defects prior to his misconduct hearing. Because he cannot raise a plausible due process claim based on the manner in which Defendants Bradley, Terra, and Stenkowski conducted the PRC proceeding, the claims will be dismissed with prejudice.

## C.   Eighth Amendment Claims

Hill alleges that during the altercation with Defendant Knaub on June 29, 2021 at SCI Camp Hill, he was sprayed in the face with pepper spray and tackled to the ground. (ECF No. 1 at 4-5.) He claims that the spray rendered him unable to see and burned his skin. (*Id.* at 5.) Hill further alleges that he suffered serious injuries from the incident, including blurred vision in both eyes and a flickering of light in his left eye. (*Id.*) He also "suffered an asthma attack and had to be placed on oxygen. He is having chest pain when he breathes deeply." (*Id.*) Additionally, Hill "suffered injuries to the neck, right elbow and left knee from being slammed to the ground. He has cuts on both wrists and numbness in his hands from the cuffs." (*Id.* at 5-6.) He claims that he "has made numerous requests for medical treatment, both verbally and written requests, and they have been ignored." (*Id.* at 6.) After his arrival at SCI Phoenix, Hill contends that he "was not seen by medical until July 12, 2021. They failed to check his eyes, breathing or heart. They failed to take any X-rays and simply prescribed him some Motrin for the pain. The examination was designed to check for visible injuries." (*Id.*) To the extent Hill is alleging that the Phoenix Defendants failed to provide medical treatment, the allegations do not provide a basis for relief.

To state a plausible constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Hill's allegations lack adequate factual development to support a plausible inference that the actions of the Phoenix Defendants caused the claimed constitutional violations.  There simply are not enough facts in the Complaint to support a plausible inference that any of the Phoenix Defendants was aware that Hill required medical treatment, much less that any of these Defendants acted intentionally to refuse to provide medical treatment, delayed treatment, or personally prevented Hill from receiving treatment.  Because Hill does not provide any factual

allegations pertaining to the purported deliberate indifference on the part of the individual Phoenix Defendants, Hill's allegations do not support plausible Eighth Amendment claims.

## IV.     CONCLUSION

For the foregoing reasons, any claim against Defendant Sorber based on Hill's transfer from SCI Camp Hill to SCI Phoenix is dismissed with prejudice, as amendment of this claim would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile.").  Similarly, any claims against Defendants Sorber, Bradley, Terra, and Stenkowski based on the determination to place Hill in RRL status prior to the misconduct hearing are dismissed with prejudice.

Because the Court cannot say at this time that Hill can never assert plausible claims for a failure to provide medical treatment against an appropriate defendant at SCI Phoenix, Hill's Eighth Amendment claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and Hill will be granted leave to amend if he can cure the defects the Court has identified.  The Court will give Hill an opportunity to file an amended complaint in the event he seeks to amend his Eighth Amendment claims.  Finally, because only Hill's claims against the Phoenix Defendants are presently before this Court, the Camp Hill Defendants will be terminated from this Court's docket.  An appropriate Order follows.

BY THE COURT:

*Eduardo C. Robreno*
_____
**EDUARDO C. ROBRENO, J.**